# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| **TERESA  HILL, Individually**<br>**and as agent of Hill Law Firm,** ) | **CASE NO.** <u>**2:25-cv-13197-RMG-PJG**</u> |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | **(JURY TRIAL DEMANDED)** |
| ) | |
| **MERRICK B. GARLAND,** ) | |
| **CHRISTOPHER WRAY,** ) | |
| **JOSEPH R. BIDEN, JR.,** ) | |
| **KAMALA D. HARRIS,** ) | |
| **JACK SMITH,** ) | |
| **AT&T INC.,** ) | |
| **AT&T MOBILITY LLC,** ) | |
| **AT&T SERVICES, INC.,** ) | |
| **AT&T CORP,** ) | |
| **AT&T COMMUNICATIONS, LLC,** ) | |
| **CRICKET WIRELESS LLC,** ) | |
| **FBI - JOHN DOES 1-10** ) | |
| **(unknown federal agents, officials, or employees),** ) | |
| **JOHN DOE –** ) | |
| **SOUTH CAROLINA STATE/** ) | |
| **LOCAL OFFICIALS/CITIZENS 1-10** ) | |
| **(unknown state or local officials** ) | |
| **who conspired in the surveillance),** ) | |
| ) | |
| *Defendants,* ) | |

---

Plaintiff Teresa  Hill, individually and doing business as Hill Law Firm ("Plaintiff"), complaining of the Defendants above named, alleges and says as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action for Fourth Amendment violations under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), Fourteenth Amendment due process and equal protection violations, Federal Communications Act violations, Stored

Communications Act violations (18 U.S.C. § 2701 et seq., seeking statutory and actual damages), RICO conspiracy, invasion of privacy, negligence, intentional infliction of emotional distress, breach of contract, South Carolina Unfair Trade Practices Act (SCUTPA), negligent hiring, retention, and supervision, and Computer Fraud and Abuse Act violations (18 U.S.C. § 1030) arising from a politically motivated, warrantless surveillance campaign targeting Plaintiff—a white, conservative, female attorney in Charleston, South Carolina—because of her representation of clients in high-profile politically related litigation and her contact and views on political presidential politics in 2016 and 2020 to the present day.

2. During the COVID shutdown Plaintiff, who is an attorney practicing law in Ravenel, South Carolina, which is located in Charleston County, was involved in a high-profile real estate property case involving the crown jewels of the gated sea islands of South Carolina Seabrook Island. Seabrook Island is the sister island of Kiawah Island and is similarly situated. The case *Glenn, et al vs. Seabrook Island Club, et al*, 2:22-cv-00847-BHH D.S.C. 2022, (Glenn vs Seabrook Island Club), involved decades upon decades of unlawful real estate transactions by the most privileged in the state of South Carolina and possible in the country. Banks, realtors, insurance companies, mortgage companies, refinances, foreclosures, and decades upon decades of loans and real estate transactions which were questionable.

3. The Glenn vs Seabrook Island Club case which was a politically charged case  not just because it was a South Carolina crown jewel gated community involving questionable real estate transactions and sales which were alleged to be antitrust violations, but the case also involved politically charged COVID issues surrounding Seabrook Island Club refusing access to members of the club. Members which the club had just forced to purchase membership but did not tell them they would not be allowed to step foot in the high society club.  The case was tantamount to a whistleblowers case.

4. The case at had involves a BIVENS claim which evolved from political retaliation aimed at Plaintiff Teresa Hill. Plaintiff was treated differently from others similarly situated specifically the other defense attorneys involved in *Glenn, et al vs. Seabrook Island Club, et al*, 2:22-cv-00847-BHH D.S.C. 2022). The unequal treatment by Federal Defendants of politically conservative Plaintiff attorney Hill was to retaliate for potential liberal political donors. The Hill's invasion of privacy was intentional and purposeful. The invasion of Hill's privacy by Defendants by placing an unknow SIM on her phones was to harass Hill and destroy her life so that she would leave the area, never to be heard from again. No longer would she litigate cases similar to *Glenn, et al vs. Seabrook Island Club, et al*, 2:22-cv-00847-BHH D.S.C. 2022 but the evidence would be gone. Defendants destroyed Plaintiff's life through spying, harassment, and intimidation through local courts and law

enforcement. There was no rational basis for the difference in treatment of the attorneys in *Glenn, et al vs. Seabrook Island Club, et al* other that the Federal Defendants were aiding the Defense attorneys in *Glenn, et al vs. Seabrook Island Club, et al*, to spy on Plaintiff Teresa Hill and intended to either win the case through legal espionage or destroy Hill and everything she had worked for her entire life. The discrimination against Plaintiff was motivated by discriminatory animus based on a protected class political conservative viewpoint.

5.  Defendants conspired to install and did install an unauthorized SIM card at an AT&T store intercept real-time communications, hack accounts, steal trade secrets, and destroy her law practice through a coordinated operation involving for financial gain, political purpose, legal advantage, data accumulation, and political power and control of the White House and was carried out by Defendants.

6.  This action incorporates revelations from U.S. Senator Chuck Grassley's October 2025 oversight report, exposing FBI subpoenas for GOP senators' phone data without warrants. Plaintiff's SIM swap was part of this pattern, facilitated by AT&T Defendants in violation of federal law.  This action also involves another telecommunications company and other defendants named in two other actions pending in this court in *Hill vs. Verizon Communications*, Inc., 2:25-cv-5297-RMG-PJG, and *Hill vs. Charleston County Sheriff's Office*, et al., 2:25-cv-11257-RMG-MGB.

7.  All causes of action in this complaint seek monetary damages (compensatory, punitive, treble, statutory, and actual) against the Defendant former federal employees (Garland, Wray, Biden, Harris, Smith, and John Does 1-10) and AT&T Defendants (AT&T Inc., AT&T Mobility LLC, AT&T Services, Inc., AT&T Corp., AT&T Communications, LLC, Cricket Wireless LLC).

---

## II. PLAINTIFF

8.  Plaintiff Teresa  Hill is a resident of Charleston County, South Carolina, and an attorney licensed in South Carolina, operating Hill Law Firm at 6209 Savannah Highway, Ravenel, SC a small rural community in the southern part of Charleston County in which she has raised a family and practiced law and served her community since 1990. For the most part she serves a minority community. At all relevant times, she was a customer of Defendant AT&T, Inc. and the other AT&T defendants, using a cellular phone purchased from AT&T and cellular service acquired through AT&T for her business and personal communications, the iPhone referenced in this complaint and which was the subject of

the unlawful spying was purchased from AT&T in 2022. It was a new phone for Plaintiff which was to be loaded with by AT&T Defendants with only one cellular phone line. Defendants loaded a second cellular line on Plaintiff's phone by unlawfully loading a SIM which Plaintiff did not authorize or have knowledge of.

---

## III. DEFENDANTS

9.  Defendant Merrick B. Garland is the former Attorney General of the United States. This action is brought against him for approving the politically motivated surveillance of Plaintiff. His address is 601 Massachusetts Avenue, NW, Washington, DC 20001-3743.

10. Defendant Christopher A. Wray is the former Director of the Federal Bureau of Investigation. This action is brought against him for approving the politically motivated surveillance of Plaintiff. His address is 1180 Peachtree Street, NE, Atlanta, GA 30309.

11. Defendant Joseph R. Biden, Jr. is the former President of the United States this action is brought against him for approving the politically motivated surveillance of Plaintiff. His address is 1209 Barley Mill Road, Wilmington, DE 19807.

12. Defendant Kamala D. Harris is the former Vice President of the United States; this action is brought against her for approving the politically motivated surveillance of Plaintiff. Her address is 435 N. Kenter Avenue, Los Angeles, CA 90049.

13. Defendant Jack Smith is the former Special Counsel, sued for investigating and targeting conservatives, specifically Plaintiff. He is a career DOJ prosecutor who prior to being appointed as Special Counsel by Defendant Merrick B. Garland in November of 2022 he was a prosecutor for the EU funded Kosovo Court, The Hauge, Netherlands. His address is Covington & Burling, LLP, One City Center, 850 Tenth Street, NW, Washington, DC 20001.

14. Defendant AT&T Inc. is a Delaware corporation headquartered in Dallas, TX, operating a cellular phone business in South Carolina and the United States. Plaintiff was and is a customer of AT&T Inc. The registered agent for AT&T Inc. is The Corporate Trust Company located at 1209 Orange Street, Wilmington, Delaware, 19801. Plaintiff was at all times referenced herein and currently is a customer of this defendant.

15. Defendant AT&T Mobility LLC is a Delaware limited liability company headquartered in Dallas, TX, a subsidiary of AT&T Inc., providing wireless telecommunications services

nationwide, including in South Carolina. The registered agent for AT&T Mobility LLC is The CT Corporation System located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. Plaintiff was at all times referenced herein and currently is a customer of this defendant.

16. Defendant AT&T Services, Inc. is a Delaware corporation headquartered in Dallas, TX, a subsidiary of AT&T Inc., handling operational aspects of wireless services, including customer service and billing in South Carolina. The registered agent for AT&T Services, Inc. is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Plaintiff was at all times referenced herein and currently is a customer of this defendant.

17. Defendant AT&T Corp. is a New York corporation headquartered in Dallas, TX, a subsidiary of AT&T Inc., involved in telecommunications operations in South Carolina. The registered agent for AT&T Corp. is CT Corporation System 1999 Bryan Street, Suite 900, Dallas, TX 75201 or CT Corporation System, 28 Liberty Street New York, New York 10005. Plaintiff was at all times referenced herein and currently is a customer of this defendant.

18. Defendant AT&T Communications, LLC is a Delaware limited liability company headquartered in Dallas, TX, a subsidiary of AT&T Inc., providing communication services in South Carolina. The registered agent for AT&T Communications, LLC is The Corporate Trust Company located at 1209 Orange Street, Wilmington, Delaware, 19801. Plaintiff was at all times referenced herein and currently is a customer of this defendant.

19. Defendant Cricket Wireless LLC is a Delaware limited liability company headquartered in Dallas, TX, a subsidiary of AT&T Inc., providing prepaid wireless services. (Collectively, AT&T Inc. and its subsidiaries are referred to as "AT&T Defendants".) The registered agent for Cricket Wireless LLC is The Corporate Trust Company located at 1209 Orange Street, Wilmington, Delaware, 19801. Plaintiff was at all times referenced herein and currently is a customer of this defendant.

20. Defendants John Does 1-10 are unknown federal agents, officials, or employees of the DOJ, FBI, CIA, FISA Court and NSA who participated in the actions described herein.

21. Defendants SOUTH CAROLINA STATE/LOCAL OFFICIALS/CITIZENS 1-10 are unknown state or local officials who conspired in the surveillance, invasion of privacy, stalking and harassment actions described herein.

## IV. JURISDICTION AND VENUE

22. This Court has federal question jurisdiction arising from Defendants' unconstitutional surveillance and spying on Plaintiff, an American citizen, in violation of the Fourth Amendment to the United States Constitution. Defendants, through a secretive FBI investigation codenamed "Arctic Frost," unlawfully collected Plaintiff's phone metadata—including call logs, timing, and associated records—without a warrant, probable cause, or judicial oversight, as part of a broader effort targeting over 160 Republicans involved in or associated with the 2020 presidential election certification process. This conduct represents a blatant abuse of federal power, infringing on Plaintiff's privacy rights and chilling his protected political activities. This Court has federal question jurisdiction under 28 U.S.C. § 1331 for claims arising under the U.S. Constitution (via Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), for federal actors), the Federal Communications Act (47 U.S.C. § 201 et seq.), the Stored Communications Act (18 U.S.C. § 2701 et seq.), the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.), and the Computer Fraud and Abuse Act (18 U.S.C. § 1030). Supplemental jurisdiction exists under 28 U.S.C. § 1367 for state-law claims.

23. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events occurred in South Carolina, including at the Mount Pleasant AT&T store, and Plaintiff resides in South Carolina and is engaged in business in South Carolina. All named Defendants  either do business in South Carolina or have substantial contacts with the state and have submitted to its jurisdiction.

---

## V. FACTUAL ALLEGATIONS

24. Plaintiff Teresa  Hill was at all times a resident of Charleston County, South Carolina, and a customer of Defendant AT&T Inc. (AT&T) using a cellular phone purchased from AT&T and cellular service acquired through AT&T for her business and personal communications.  The subject AT&T phone was purchased by Plaintiff in 2022. In August of 2025 Plaintiff suspected her phone was compromised. Plaintiff learned from United States Congressional Hearings on October 25, 2025 of the aspects of  operation "Arctic Frost" which arising from Defendants' unconstitutional surveillance and spying on Plaintiff, an American citizen, in violation of the Fourth Amendment to the United States Constitution. Defendants, through a secretive FBI investigation codenamed "Arctic Frost," unlawfully collected Plaintiff's phone metadata—including call logs, timing, and associated records—without a warrant, probable cause, or judicial oversight, as part of a broader effort targeting over 160 Republicans involved in or associated with the 2020

presidential election certification process. This conduct represents a blatant abuse of federal power, infringing on Plaintiff's privacy rights and chilling her protected political activities.

25. During the COVID shutdown during the year of 2022 Plaintiff, who is an attorney practicing law in Ravenel, South Carolina, which is located in Charleston County, was involved in a high-profile real estate property case involving the crown jewels of the gated sea islands of South Carolina Seabrook Island. Seabrook Island is the sister island of Kiawah Island and is similarly situated. The case *Glenn, et al vs. Seabrook Island Club, et al,* 2:22-cv-00847-BHH D.S.C. 2022, (Glenn vs Seabrook Island Club),allegedly involved decades upon decades of unlawful real estate transactions by the most privileged in the state of South Carolina and possible in the country as well as local and national banks, realtors, insurance companies, mortgage companies, refinances, foreclosures, and decades upon decades of loans and real estate transactions which were questionably transacted.

26. The *Glenn vs Seabrook Island Club* case which was a politically charged case not just because it involved a South Carolina crown jewel gated community involving questionable real estate transactions and sales which were alleged to be antitrust violations, but the case also involved highly politically charged COVID issues surrounding Seabrook Island Club refusing access to members of the club. Club members and property owners who, Seabrook Island Club and Seabrook Island Property Owners Association, and Seabrook Island Realty, had just forced to purchase an expensive club membership but did not tell them at the real estate closing when they paid for the nonoptional club membership that they as club members would not be allowed to step foot in the high society club.  The Glenn vs Seabrook Island Club case was tantamount to a whistleblowers case from many legal perspectives.

27. Plaintiff alleges that Defendant Harris, Garland, Wray and Smith abused their power along with other unnamed Defendants identified herein as John Doe during the incapacity of the Defendant Joseph R. Biden, Jr.

28. Plaintiff alleges that Defendant Harris, Garland, Wray and Smith abused their power along with other unnamed Defendants personally authorizing surveillance in particular of the Plaintiff assist in legal espionage, to gain political power, raise campaign funds, obtain data to provide identities for millions of people illegally crossing the United States border. That Defendant Harris, Garland, Wray, and Smith abused her access to the power of the autopen and US intelligence information and data to destroy the Plaintiff and her family and her business for personal gain, politics, and power. That Defendant Harris Garland, Wray, and Smith led an unlawful weaponization of the DOJ when Biden was

incapable of such leadership. That legal and data resources of Defendant Harris from insider information and a private entity prospective provided her with a wealth of knowledge of information on which she could weaponize the DOJ, FBI, and CIA to gain political ground and funds.

29. The case at hand Hill vs. AT&T case at had involves a BIVENS claim which evolved from political retaliation aimed at Plaintiff Teresa Hill. Plaintiff was treated differently from others similarly situated specifically the other defense attorneys involved in *Glenn, et al vs. Seabrook Island Club, et al*, 2:22-cv-00847-BHH D.S.C. 2022) and other attorneys in the community. The unequal treatment by Federal Defendants of politically conservative Plaintiff Hill was to retaliate for and on behalf of potential liberal political donors. The Hill's invasion of privacy by the Defendants herein was intentional, purposeful, and unlawful. The invasion of Hill's privacy by Defendants by placing an unknow SIM on her phones was to harass Hill and destroy her life so that she would leave the area, never to be heard from again. No longer would she litigate cases similar to *Glenn, et al vs. Seabrook Island Club, et al*, 2:22-cv-00847-BHH D.S.C. 2022 and the evidence would be gone. Defendants destroyed Plaintiff's life through spying, harassment, and intimidation through local courts, local, state and county governmental entities and law enforcement. There was no rational basis for the difference in treatment of the attorneys for the treatment of other United States citizens in *Glenn, et al vs. Seabrook Island Club, et al* other than that the Federal Defendants were aiding the defense attorneys in *Glenn, et al vs. Seabrook Island Club, et al*, to spy on Plaintiff Teresa Hill and intended to either win the case through legal espionage or destroy Hill and everything she had worked for her entire life. The discrimination against Plaintiff was motivated by discriminatory animus based on a protected class political conservative viewpoint. The attorneys in *Glenn, et al vs. Seabrook Island Club, et al*, had ties to the CIA and FBI. They had the knowledge, contacts, and training to carry out and conduct the spy operation conducted on Plaintiff Hill.

30. On or about August 20, 2022, Defendants, by and through their employees and agents at the corporate AT&T store in Mount Pleasant, South Carolina, unlawfully, improperly, negligently, and fraudulently loaded an unauthorized SIM on Plaintiff's new cell phone purchased from the AT&T store, without Plaintiff's consent or knowledge.

31. The unauthorized SIM was loaded to access and monitor Plaintiff's communications, data, wireless account, calls, messages, applications, software, and cloud without authorization. At the time, Plaintiff was involved in a high-profile, politically charged case involving COVID vaccine issues and real estate on a Charleston County gated sea island.

32. AT&T Defendants added the additional phone line (SIM) to Plaintiff's new iPhone without Plaintiff's permission.

33. Plaintiff explicitly instructed AT&T employees that the new phone was to contain only one line and one number, which she verified. Without permission, AT&T Defendants loaded a second SIM, enabling unauthorized access.

34. Following the purchase, Plaintiff noticed unexplained issues with the iPhone and reported them repeatedly to AT&T Defendants, who disconnected calls or dismissed her concerns. Plaintiff eventually discovered the extra SIM.

35. Despite being dismissed, Plaintiff pieced together the criminal activity at the AT&T store. As a result, her electronic accounts were hacked, calls and messages intercepted, causing chaos in her business and life.

36. Plaintiff made numerous calls to AT&T customer service but was disconnected or told there was no issue.

37. AT&T failed to train and supervise employees to identify security issues or prevent unauthorized account changes, allowed porting without verification, and lacked monitoring for unauthorized access.

38. The federal Defendants authorized and oversaw the surveillance, using AT&T to execute the SIM swap as part of the weaponization of a political system against American citizens, including the plaintiff as a method of targeting conservatives to control the actions of conservative citizens and stifle and ultimately eliminate conservative political beliefs.

---

## VI. CAUSES OF ACTION

### <u>COUNT 1: Fourth Amendment – Unreasonable Search & Seizure</u>
### <u>(Bivens Against Federal Defendants)</u>

39. Plaintiff re-alleges all allegations herein and incorporates these allegations by reference as if fully set forth herein.

40. Plaintiff has a right to under the Fourth Amendment to the United States Constitution to protection from unreasonable government searches, seizures and intrusions into her privacy and property. The Fourth Amendment provides,

**"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."**

41. Plaintiff's constitutional rights under the Fourth Amendment were violated by Defendants GARLAND, WRAY, BIDEN, HARRIS, and FBI - JOHN DOES 1-10. The Federal Defendants violated Plaintiff's constitutional rights through an unreasonable search or seizure of her phone and other electronic devices; and the unconstitutional violation caused damage, injuries, and losses to the Plaintiff.

42. Defendants Garland, Wray, Biden, Harris, Smith, and John Does 1-10 acted unlawfully by authorizing and executing warrantless subpoenas, NSLs, and the SIM swap at the AT&T store, which constituted an unreasonable physical intrusion into Plaintiff's iPhone and digital seizure of her communications, metadata, location data, and access to other devices and content without a warrant, probable cause, or judicial oversight, in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. This conduct directly parallels the core Fourth Amendment claim recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), involving warrantless entry and search.

43. As a result, Plaintiff suffered injuries including an extreme unconscionable invasion of privacy, emotional distress, business disruption, loss of trade secrets, destruction of many relationships, an invasion of her software, disconnecting her from her life and business, loss of liberty, and financial losses exceeding $540,000,000.00, entitling her to damages. Defendants Garland, Wray, Biden, Harris, Smith, and John Does 1-10 are not entitled to qualified immunity, as the right to be free from warrantless digital searches. *Carpenter v. United States*, 585 U.S. 296 (2018).

---

## COUNT 2: Fourteenth Amendment – Equal Protection
### (Bivens Against Federal Defendants)

44. Plaintiff re-alleges all allegations herein and incorporates these allegations by reference as if fully set forth herein.

45. Plaintiff as a United States Citizen is entitled to Equal Protection under the Fourteenth Amendment. In making an equal protection claim under the Fourteenth Amendment pursuant to Bivens, Plaintiff asserts that in 2022 when she was involved in a high-profile real estate property case involving the crown jewels of the gated sea islands of South Carolina. The case involved decades upon decades of unlawful real estate transactions by the most privileged in the state of South Carolina and possibly in the country. Plaintiff Teresa Hill was handled or treated differently by Defendants to this action from others similarly situated specifically the other defense attorneys involved in *Glenn, et al vs. Seabrook Island Club, et al*, 2:22-cv-00847-BHH D.S.C. 2022). The unequal treatment of Plaintiffs by spying on her and unlawfully searching her electronic devices was a discriminatory act to retaliate on behalf of potential liberal political donors again the conservative Plaintiff. The invasion of privacy of Plaintiff privacy and the unlawful search and monitoring of her electronic device was intentional and purposeful. The unlawful access to Plaintiffs devices was to harass the conservative attorney and destroy her life so that she would leave the area. No longer would Hill litigate similar case on behave of other conservatives but the evidence she gathered would be gone. Defendants destroyed Plaintiff's life through harassment and intimidation through local courts. Local and state entities, and law enforcement. There was no rational basis for the difference in treatment of the attorneys in *Glenn, et al vs. Seabrook Island Club, et al* other that the Federal Defendants were aiding the Defense attorneys in *Glenn, et al vs. Seabrook Island Club, et al*, to spy on Plaintiff Teresa Hill and destroy her and everything she had worked for her entire life. The discrimination against Plaintiff was motivated by discriminatory animus based on a protected class of political conservative viewpoint. Hill is conservative but in her law practice of 35 years she served a predominantly Democratic base of clients. Plaintiff's data, office, trade secrets, information, and geographic area of service were identified as a valuable asset to Defendants political, legal, and business goals. Spying on her was the avenue used to take what they needed and destroy her.

46. Defendants selectively enforced the surveillance program against conservatives like Plaintiff, while sparing similarly situated liberal American attorneys involved in *Glenn, et al vs. Seabrook Island Club, et al*, and other similar cases, with no rational basis other than discriminatory intent based on political affiliation. This disparate treatment violates Equal Protection clause by targeting conservatives and minorities within that group, specifically Plaintiff, Teresa Hill. Without due process Plaintiff was surveilled, Defendant President Biden had become incapacitated. The country did not operate as it was supposed to under the law. Defendant Harris who was Vice President at the time (a Presidential hopeful) and Defendant Garland (AG Garland), Defendant Wray (FBI Wray), went rouge. They acted unlawfully and in November of 2022 brought into the DOJ, EU

funded attorney Defendant Smith. Lawlessness ensued in Defendant Biden's Presidency which included but was not limited to spying on American citizens, specifically Plaintiff.

47. As a result, Plaintiff suffered reputational harm, extreme violation of her privacy which allowed Defendants to harass and stalk Plaintiff to the point of total chaos. She suffered a complete loss of identity, invasion of privacy, loss relationships, damage to family relationships, physical injury to Plaintiff and family, harassment of family and injury to family, and loss and disruption of business opportunities, destruction of her car and her home directly caused by this discriminatory enforcement. Plaintiff suffered reputational harm from the harassment---relentless harassment in many forms, more than most people could handle. The harassment of Plaintiff was daily and unrelenting from different angles and constantly changing in methodology. Extreme psychological abuse was used to torture the Plaintiff from angles she never expected. The Southern part of Charleston County, particularly Seabrook Island, is a hot bed of retired intelligence personnel. Defendants utilized  intelligence professionals as well as lay citizens to harass Plaintiff unmercifully. They did. Defendants engaged police, law enforcement, court administration and up the chain of command in state and local government to harass Plaintiff. The response was a nightmare in which Plaintiffs' life, liberty and property were invaded or taken in a discriminatory fashion without due process. It was the most unethical, unlawful, and un-American behavior Plaintiff has ever witnessed and it was crushing.

## COUNT 3: Fifth & Fourteenth Amendment – Substantive Due Process
### (Bivens Against Federal Defendants)

48. Plaintiff re-alleges all allegations herein and incorporates these allegations by reference as if fully set forth herein.

49. Defendants without substantive due process, accessed Plaintiff's most personal private information. Defendants utilized this information to mobilize against Plaintiff Hill, without due process, local governments including but not limited to Charleston County, Dorchester County, Charleston County Sheriff's Office, Charleston County Magistrate's Court, Charleston County Jail, Charleston County Administrative Courts, Charleston County Library, the United States Postal Service, UPS, FED EX, banks, attorneys, insurance companies, Apple, Hewlitt Packard, Microsoft, software used to conduct business, software used for personal and social purposes, restaurants, facial recognition

software, medical information and services, rental car companies, auto repair companies, credit card companies, and telecommunication companies to deprive Plaintiff of her fundamental rights to life, liberty, and property. The conduct of Defendants GARLAND, WRAY, BIDEN, HARRIS, SMITH, AND FBI - JOHN DOES 1-10 towards Plaintiff Teresa Hill was so egregious and outrageous that there is no adequate alternative remedy other than a monetary remedy to attempt to place her back in the position in which she was in prior to the deprivation of her fundamental rights to life, liberty and property by the egregious conduct of Defendants GARLAND, WRAY, BIDEN, HARRIS, SMITH, AND FBI - JOHN DOES 1-10 .

50. Defendants deprived Plaintiff of her liberty interests in privacy, bodily integrity (via remote device access), and property (her privacy in her home,  law practice, phones, control of her automobile, computer, and data through many portals) through the secret SIM swap, spyware installation, and ongoing espionage, which shocks the conscience as an arbitrary abuse of power for political motives, far exceeding the limits of legitimate law enforcement.

51. This conduct caused profound psychological harm, personal devastation, business ruin, and physical injury and risks from monitoring and tracking, with no other adequate remedy available. This intentional and unauthorized access to load a SIM to Plaintiffs iPhone caused Plaintiff disruption of her life, business, business espionage, invasion of privacy, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, loss of energy and effort, harassment, repeated harassment, expenses, disturbance to her business, distraction from the business, interference in the business, chaos, disorder, targeting and tremendous anguish, distress, personal life difficulties of a huge magnitude, loss of contacts, loss of opportunities, defamation, slander, loss of information, loss of control many aspects of life and business that run through a smartphone and all the electronic devices associated with a business. Personally, Plaintiff suffered extreme stress, humiliation, mental anguish, anxiety, emotional stress, and extreme danger from many aspects but particularly stalking as a result of this SIM incident.

## COUNT 4: Stored Communications Act (18 U.S.C. § 2701)

52. Plaintiff re-alleges all allegations herein and incorporates these allegations by reference as if fully set forth herein.

53. In violation of the Stored Communications Act (18 U.S.C. § 2701) Defendant AT&T intentionally accessed and allowed Defendants access to Plaintiff's cellular data and without authorization to a facility providing electronic communication service. Defendants without Plaintiff's authorization did allow Defendants to obtain, alter, failed to prevent unauthorized access to stored electronic communications of the Plaintiff.

54. In violation of the Stored Communications Act (18 U.S.C. § 2701) AT&T Defendants intentionally allowed unauthorized access to their facilities by loading the SIM and complying with warrantless subpoenas, enabling federal agents to obtain and alter Plaintiff's stored emails, texts, and voicemails without her authorization or a valid exception.

55. Defendants allowed intentional and unauthorized access to load a SIM to Plaintiff's iPhone causing unfathomable disruption to her life, business, business espionage, invasion of privacy, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, loss of energy, decline in health, loss of tremendous effort, unfathomable harassment, repeated harassment, expenses, disturbance to her business, distraction from her business at the pinnacle of her career, interference and destruction of her business, chaos, disorder, targeting and tremendous anguish, distress, personal life difficulties of a huge magnitude, loss of contacts, loss of opportunities, reputational harm, competitive disadvantage, loss of trade secrets, strained relationships, social stigma, defamation, slander, loss of information, loss of control many aspects of life, costs incurred to mitigate the breach, identity theft, debanking, significant detrimental psychological impact, tremendous emotional suffering, mental stress and damage to all business that run through a smartphone and all the electronic devices associated with a business. Personally, Plaintiff suffered extreme stress, humiliation, mental anguish, anxiety, emotional stress, and extreme danger as a result of this SIM incident. She suffered damage to her family relationships at what should have been the apex of her life as the mother of her four children. The damage has been crushing. The damage done to Plaintiff's life cannot be undone.

## **COUNT 5: Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

56. Plaintiff re-alleges all allegations herein and incorporates these allegations by reference as if fully set forth herein.

57. In violation of the  Computer Fraud and Abuse Act (18 U.S.C. § 1030) **(**CFAA) Defendants intentionally accessed  Plaintiff's protected computer without authorization or exceeding authorization. Defendants access Plaintiffs computer and other electronic devices with intent to defraud, obtain information, and cause damage. The access to Plaintiff devices resulted in losses exceeding $540,000,000.00  and other substantial harm, damages and losses identified herein.

58. All Defendants accessed or caused access to Plaintiff's protected iPhone, computer, devices, and accounts via the SIM swap and spyware, without Plaintiff's authorization or exceeding authorization, with intent to obtain confidential information for business purposes, harassment, with the intent to destroy evidence, for political purposes, fraud, and to disrupt and destroy her practice eliminating her as an attorney and silencing her as a witness, causing Plaintiff's losses over exceeding $540,000,000.00  and other substantial harm identified herein.

59.  Defendants  intentional and unauthorized access Plaintiff's iPhones, computers, and other electronic devices caused disruption of Plaintiff's life, business, business espionage, invasion of privacy, invasion of electronic information, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, loss of energy, decline in health, loss of tremendous effort, unfathomable harassment, repeated harassment, expenses, disturbance to her business, debilitating disruption to her business at the pinnacle of her career, ruination of her law practice, interference and destruction of her business, chaos, disorder, targeting and tremendous anguish, distress, personal life difficulties of a huge magnitude, loss of contacts, loss of opportunities, reputational harm, competitive disadvantage, loss of trade secrets, strained relationships, social stigma, defamation, slander, loss of information, loss of control many aspects of life, costs incurred to mitigate the breach, identity theft, debanking, significant detrimental psychological impact, tremendous emotional suffering, mental stress and damage to all business that run through a smartphone and all the electronic devices associated with a business. Personally, Plaintiff suffered extreme stress, humiliation, mental anguish, anxiety, emotional stress, and extreme danger as a result of this SIM incident. She suffered damage to her family relationships what should have been the apex of her life as the mother of her four children.

## COUNT 6:

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

**60.** Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

**61.** All Defendants are associated in fact with or a legal entity engaged in interstate commerce in the state of South Carolina and beyond state lines at all times referenced herein.

**62.** Defendants engaged in acts of racketeering involving hacking, wiretapping, or stealing confidential data of Plaintiff committed within a 10-year period, related by purpose, method, or result, and showing continuity closed-ended over a three-year period and/or open-ended with a threat of future similar conduct.

**63.** The Defendants conducted or participated in the enterprise's affairs through the pattern of racketeering activity injuring the Plaintiff involving cyber legal espionage and SIM spying through SIM swapping.

**64.** Defendants intercepted Plaintiff's calls, email, information, date, wire, oral, or electronic communications illegally. Defendants intercepted Plaintiffs communications, such as phone calls and emails, without Plaintiffs consent. (18 U.S.C. § 2511)

**65.** Defendants used SIM spying to intercept Plaintiff's business communications and/or to change passwords and install spyware to monitor their electronic correspondence and/or used backdoor processes to gain access unlawfully to Plaintiff's stored information, evidence, and data which helped Defendants financially, politically and allowed legal, business, economic and political advantages to Defendants.

**66.** Defendants used SIM spying to steal, misappropriate and disclose Plaintiffs trade secrets and legal strategies, information, evidence, notes, impressions, photos, files, evidence, and data with intent to benefit economically, legally, and politically. Theft of Trade Secrets (18 U.S.C. § 1832).

**67.** Defendants used SIM spying to gain access to gain unauthorized access to Plaintiffs iPhone and other electronic devices, computers, phones, clouds to obtain information, or cause damage to the cases of Plaintiff and the business of Plaintiff thereby Defendants

benefiting financially, competitively, economically, and politically. Computer Fraud and Abuse Act Violations (18 U.S.C. § 1030).

**68.** Defendants unauthorized access to Plaintiff's protected computers, software ,phones, applications, email, data, and other equipment to obtain information caused irreparable damage to Plaintiff.

**69.** Defendants engaged in wire fraud using electronic communications, SIM spying, phone networks, emails, Microsoft backdoors, Apple product backdoors, and hacking tools available to government, EU, and China to execute a scheme to defraud, obtain property, data, information by false pretenses from Plaintiff for Defendants political benefit and advantage. (18 U.S.C. § 1343)

**70.** Defendants engaged in SIM swapping, SIM spying, destruction of information, tracking, stalking to access Plaintiff's communications, hacking a law firm's email to steal data constituted wire fraud because it was done to gain a competitive advantage, financial benefit and political gain for the purpose of creating fictious voters or gaining donors through legal power over Plaintiff and specifically Defendants conduct did accomplish that goal gain of information, control strategy, stalking, harassment, political gain, legal weaponization, financial gain and extreme leverage over the Plaintiff.

**71.** Defendants actively participated in the enterprise's affairs by planning and executing the ongoing SIM spying and espionage directed toward Plaintiff.

**72.** Plaintiffs suffered significant injury and extreme loss to business, opportunities, and property proximately caused by the Defendants' racketeering activity. The patterned racketeering activity severely damaged the Plaintiff as was intended by Defendants for their gain financially, politically, legally, and with entrenched unlawful motives impacting on an interstate commerce, political voting, and the state and federal Court systems as basis to cause injury to Plaintiff's business, person, political interest, and property and others similarly situated.

**73.** As a direct and proximate consequence of Defendants acts of racketeering involving hacking, wiretapping, and stealing confidential data, information, photos, and trade secrets pf Plaintiff, Plaintiff has suffered and continues to suffer damages proximately resulting from the hacking, wiretapping and stealing of confidential information in an amount to exceeding $540,000,000.00 to be determined by a jury of her peers.

## COUNT 7: Negligence (Against AT&T Defendants)

74. Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

75. Plaintiff was deprived of her AT&T cellphone number, which also included the business telephone number used for Hill Law Firm Plaintiff and her business Hill Law Firm doing business at 6209 Savannah Highway, Ravenel, South Carolina was subject to an disruption of business, business espionage, invasion of privacy, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, loss of energy and effort, harassment, repeated harassment, expenses, disturbance to her business, distraction from the business, interference in the business, disorder, targeting and tremendous anguish, distress, personal life difficulties of a huge magnitude, loss of contacts, loss of opportunities, defamation, slander, loss of information, loss of control many aspects of life and business that run through a smartphone and all the electronic devices associated with a business. Personally, Plaintiff suffered extreme stress, humiliation, mental anguish, anxiety, emotional stress, and extreme danger as a result of this SIM incident caused by AT&T Defendants and other Defendants, by and through each defendants' agents and employees. Plaintiff was tracked through her AT&T cell phone and attempts were made on her life. She suffered injuries and property damage to vehicles and equipment. Plaintiff was stalked through her AT&T cell phone and is still fearful of her life.

76. Plaintiff is and has been an AT&T cellphone user in the County of Charleston, in the State of South Carolina since August 8, 2022.

77. This action is bought by Teresa Hill individually and on behalf of Hill Law Firm. Both are and have been an AT&T customer who lost a massive amount in this incident of identity theft crime called "SIM swapping" or "SIM hijacking" SIM spying".

78. A subscriber identify module, SIM, stores user data in phones on the Global System for Mobile (GSM) network – the radio network used by AT&T Defendants to provide cellular service to its subscriber.

79. SIM cards or ESIMS are principally used to authenticate cellphone subscriptions; as without a SIM card or electronic SIM, GMS phones are not able to connect to AT&T's telecommunication network.

80. Not only is a SIM card vital to using a phone on the AT&T network, the SIM card or ESIM also holds immeasurable value as a tool to identify the user of the phone – a power that can be corrupted to steal property and the identity of the user. AT&T states in customer policy that it guarantees customers that AT&T will handle, manage, and oversee

their interactions – including and personal information shared during those interactions – with honesty and ethical care. AT&T goes on to guarantee its customers that it will safeguard the customers and the companies confidential and proprietary information and that of customers, suppliers, and employees. AT&T Defendants led Plaintiff to believe that AT&T Defendants comply with applicable laws, regulations, and AT&T policies in the conduct of our business." Maintaining the confidentiality of communication is AT&T's duty and obligation to customers, such as the Plaintiff, under the Federal Communications Act of 1934 and pertinent implementing regulations.

81. AT&T Defendants were and are aware of the pervasive harm posed by SIM swapping, as AT&T has been a party to similar actions in the past. Even though AT&T Defendants were aware of the pervasive issue of SIM swapping it did not take measures to adequately protect and inform its customers, specifically the Plaintiff from the harm she and her business suffered.

82. Plaintiff alleges that AT&T Defendants participation in the SIM/ESIM SWAP theft involving Plaintiff's cellular phone which was perpetrated by several AT&T employees and at least one non-employee in the store and others not in the store the day the SIM swap occurred. As a result of AT&T Defendants failures if not active, active participation in the store operated in Mount Pleasant, South Carolina, Plaintiff has suffered a humiliating and degrading invasion of privacy, disruption of business, extreme embarrassment, loss of credibility, loss of an extraordinary amount of time, energy, and expense, sleep, disruption to her personal life, decline in her health, loss of data, loss of control many aspects of life and business that run through a smartphone. Loss of access to almost every account owned. She suffered and still suffers extreme stress, humiliation, mental anguish, and emotional stress.

83. AT&T Defendants owed Plaintiff a duty of, inter alia, care in handling and safeguarding of her customer account for the purpose of providing wireless cellular and data services.

84. That the injuries, losses, and damage to the Plaintiff were the result of the AT&T Defendants' failures, negligence, carelessness, and willfulness, if not active participation in SIM swap theft, that was inflicted in Plaintiff by Defendant, AT&T Defendants, in the following particulars:

**a. Negligent management of Plaintiff's account and account services.**

**b. Loading an unauthorized SIM to Plaintiff's new Apple iPhone.**

**c. Unauthorized Access: Installing a SIM card without the Plaintiff's explicit consent, violating her right to control her device.**

**d. Breach of Privacy: Activating a SIM that could potentially track or monitor the Plaintiff customer's activities without her knowledge.**

**e. Failure to Obtain Consent: Not informing the customer or obtaining their approval before modifying their device with a SIM card.**

**f. Misrepresentation: Failing to disclose that a SIM was preloaded or implying the phone was free of unauthorized modifications.**

**g. Inadequate Employee Training: Neglecting to train staff properly, leading to unauthorized SIM installation by employees.**

**h. Violation of Contract Terms: Acting against the terms of the purchase agreement or service contract by altering the device without permission.**

**i. Negligent Security Practices: Allowing unauthorized SIMs to be installed due to lax security or oversight into store operations.**

**j. Fraudulent Billing: Potentially linking the unauthorized SIM to the customer's account, resulting in unexpected charges.**

**k. Non-Compliance with Regulations: Violating consumer protection laws or telecommunications regulations regarding device modifications.**

**l. Failure to Investigate Complaints: Neglecting to thoroughly investigate or document customer reports of phone issues, such as unauthorized SIM activity or malfunctions.**

**m. Ignoring Customer Rights: Disregarding the customer's right to have their concerns addressed, potentially violating consumer protection laws or service agreements.**

**n. Inadequate Customer Service Training: Failing to train staff to properly handle and escalate complaints about device issues, leading to dismissive or negligent responses.**

**o. Breach of Duty of Care: Not taking reasonable steps to ensure the customer's device is functioning as expected or addressing potential unauthorized modifications.**

p. **Negligent Record-Keeping:** Failing to maintain accurate records of customer complaints, which could hinder resolution or identification of systemic issues.

q. **Delay in Response:** Unreasonably delaying or refusing to address reported issues, potentially exacerbating harm like unauthorized charges or data breaches.

r. **Failure to Escalate Issues:** Not escalating serious complaints, such as those involving unauthorized SIMs, to appropriate technical or legal teams for resolution.

s. **Misleading Customers:** Providing false or misleading information to customers about the cause of their phone issues to avoid liability.

t. **Non-Compliance with Regulatory Standards:** Ignoring industry or legal standards that require timely and effective responses to customer complaints about device tampering or service issues.

u. **Fraudulent activity with a third party in the AT&T store to upload the unauthorized SIM to Plaintiff's phone.**

v. **Negligent Oversight of Third Parties:** If the SIM was installed by a third-party vendor or partner, failing to oversee their actions or ensure they follow proper protocols.

w. **Breach of Privacy:** Activating a SIM that could potentially track or monitor the customer's activities without their knowledge and that did track and monitor Plaintiff's activities without their knowledge or consent.

x. **Failure to Obtain Consent:** Not informing the customer or obtaining their approval before modifying their device with a SIM card.

y. **Misrepresentation:** Failing to disclose that a SIM was preloaded or implying the phone was free of unauthorized modifications.

z. **Inadequate Employee Training:** Neglecting to train staff properly, leading to unauthorized SIM installation by employees.

aa. **Intentionally Loading Sim of a Third Party to Plaintiff's phone with intent to assist third parties with monitoring Plaintiff's.**

bb. **Violation of Contract Terms:** Acting against the terms of the purchase agreement or service contract by altering the device without permission.

cc. **Negligent Security Practices:** Allowing unauthorized SIMs to be installed due to lax security or oversight into store operations.

dd. **Fraudulent Billing:** Potentially linking the unauthorized SIM to the customer's account, resulting in unexpected charges.

**ee. Failure to Verify Identity: Not confirming the customer's identity or intent before performing actions like SIM installation.**

**ff. Non-Compliance with Regulations: Violating consumer protection laws or telecommunications regulations regarding device modifications.**

85. That by reason of the aforementioned negligence, carelessness, willfulness, wantonness, and intentionally fraudulent conduct of the AT&T Defendants, as aforesaid in unlawful SIM swap scheme, Plaintiff suffered extreme losses and damages. Plaintiff still suffers and upon information and belief will continue to suffer permanent loss of credibility, extreme anguish, and loss of huge opportunity. Plaintiff was required to expend money, or become obligated for many expenses and damage to her equipment, software, applications, accounts, loss of use of her phone number and loss opportunity of the pinnacle of her legal career and private life, unfathomable invasion of privacy of every aspect of her life and business, ruination of a 35 year career, loss of relationships, loss of business, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, damage to her car, injury to her body, defamation, slander, loss of energy, and expenses, disruption to her business, loss of equipment, and disruption of her personal life, loss of contacts, loss of information, loss of control many aspects of life and business that run through a smartphone and she suffered extreme stress, humiliation, mental anguish, emotional stress and an extreme invasion of privacy.

86. That by reason of the aforementioned direct consequences of Defendants negligence, carelessness, willfulness and wantonness conduct and intentionally fraudulent conduct of the AT&T Defendants Plaintiff was damaged and seeks compensatory actual and punitive damages for the invasion of privacy, ruination of a 35 year career, loss of relationships, loss of huge opportunity, disruption and destruction of life, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, defamation, slander, energy, and expense, disruption to her business, loss of equipment, and loss of opportunities of a life time with her family, loss of contacts, loss of information, loss of control many aspects of life and business that run through a smartphone. She suffered extreme stress, humiliation, mental anguish, anxiety, and emotional stress. She became a physical target of others because of the tracking enabled through her cell phone and was physically injured. The losses outlined by Plaintiff herein are ongoing and permanent and extreme.

87. Plaintiff was unable to attend normal duties and pursuits and have been otherwise permanently injured, forced to miss opportunities occurring only at the pinnacle of the life of a mother and professional opportunities occurring only at the pinnacle of a legal

career and damaged, all to her damages, actual and punitive, in the amount to be determined by the triers of fact in excess of $540,000,000.00.

---

### COUNT 8: Federal Communications Act (47 U.S.C. §§ 201, 202, 222)

88. Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

89. The Federal Communications Act (FCA) regulates interstate telecommunications carriers such as Defendant AT&T.

90. Defendant AT&T is a common carrier engaged in interstate communication by wire for the purpose of furnishing communication services within the meaning of section 201(a) of the FCA. As a common carrier, Defendant AT&T is subject to the substantive requirements of sections 201 and section 202 of the FCA.

91. Defendant AT&T's conduct, as alleged herein, constitutes a knowing violation of section 201(b) and section 201(a). Further, under section 217, Defendant AT&T is also liable for the acts, omissions, or failures as alleged in this Complaint, of its officers, agents, offers, or other persons action for or employed by Defendant AT&T.

92. Defendant AT&T is a "telecommunications carrier" within the meaning of section 222, which requires every telecommunications carrier to protect, among other things, the confidentiality of proprietary information of and relating to its customers which includes Plaintiff.

93. Defendant AT&T's conduct, as alleged herein. Constitutes a knowing violation of section 222 which imposes duties on telecommunications carriers to protect confidentiality and proprietary information from other carriers, manufacturers, and customers. Defendant AT&T disclosed, without Plaintiff's approval, Plaintiff's confidential and proprietary information to third party or parties, specifically for reasons other than for emergency services. Defendant AT&T also improperly, wrongfully and unlawfully permitted access to Plaintiff's customer proprietary network information in Defendant AT&T's provision of services.  47 U.S.C. § 222

**94.** As a direct consequence of Defendant AT&T's violation of the FCA, Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial by a jury.

---

### COUNT : Breach of Contract (Against AT&T Defendants)

**95.** Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

**96.** Plaintiff entered into a contract both express and implied with Defendant AT&T.

**97.** AT&T Defendants offered to provide wireless phone service in consideration of payment from Plaintiff. Under the terms of the agreement, Plaintiff was required to pay in full the charges submitted to her on her bill. Plaintiff contracted to pay for cellular telephone services and for a new Apple iPhone. Plaintiff accepted the offer of services and new Apple iPhone from AT&T and performed all the conditions, covenants, and promises and agreements required of her under the terms of the contract.

**98.** Among other things, the express and implied terms of the contract were that AT&T would provide reasonable and appropriate security to prevent unauthorized access to her wireless account or otherwise safeguard and protect Plaintiff's private and confidential account and other information and not transfer her number or allow another number to be transferred onto her phone without her express authorization which was not given.

**99.** AT&T Defendants has failed, neglected, and refused, and continues to fail neglect and refuse to perform its part of the contract or tender such performance.

**100.** In the absence of such express and implied contract terms, Plaintiff would have acted differently in her purchasing decision or would not have agreed to enter into a contract with AT&T. Nor would she have entered into the contract if AT&T had properly disclosed to her the true extent of its security measures or lack thereof.

**101.** As a direct consequence of AT&T Defendants breach of contract, Plaintiff has been damaged and continues to be damaged in an amount to be proven at trial and decided by a jury of twelve.

## COUNT 10: South Carolina Unfair Trade Practices Act
## (SCUTPA)

**102.**　　Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

**103.**　　Defendants engaged in an unfair or deceptive act in the conduct of trade, commerce, and politics involving the Plaintiff's cellular and data service.

**104.**　　The act unfair and/or deceptive acts of Defendants adversely affected the public interest, which involves the security and privacy of cellular and data services in the State of South Carolina. The AT&T Defendants actions of SIM swapping to spy has potential for repetition in South Carolina.

**105.**　　Plaintiff is a consumer as that term is defined under the South Carolina Unfair Trade Practices Act ("SCUTPA"). One or more of the Defendants engaged in deceptive acts or practices in soliciting Plaintiff to use AT&T cellular phone and data services. In particular, the false, misleading, and deceptive acts perpetrated by one or more of the Defendants included but not limited to:

**a) Misrepresentation of Services or Charges: Falsely advertising service quality, coverage, or pricing knowing of the scheme to load and extra SIM on Plaintiff's phone to enable spying, invasion of privacy and disruption of business and life.**

**b) Hidden fees or billing for services not provided, such as charging for unauthorized SIM or subscriptions.**

**c) Unauthorized Account Modifications: Adding services or lines to a customer's account without consent, specifically activating new SIMs or plans.**

**d) Failing to secure Plaintiff's customer accounts, allowing unauthorized users to exploit Plaintiff's AT&T accounts through SIM swapping and/or fraudulent activations.**

**e) Deceptive Practices in SIM Card Distribution: Knowingly or negligently supplying SIM cards to unauthorized users, who engage in fraudulent activities particularly SIM swapping frauds to steal Plaintiff's identities and access accounts to spy on Plaintiff and disrupt Plaintiff's business.**

**f) Failing to implement reasonable safeguards to verify SIM card activations, leading to widespread fraud, spying and invasion of privacy.**

**g) Unfair Contract Practices: Imposing unconscionable contract terms, such as excessive early termination fees or automatic renewals without clear disclosure**

**that there would be no cellular security provided and that in fact Defendant AT&T would assist with spying on the Plaintiff and disrupting Plaintiff's business.**

106.     Plaintiff suffered actual, ascertainable damages as a result of Defendants' false, misleading, or deceptive acts and practices engaged in by one or more of the Defendants.

107.     Plaintiff suffered actual, economic, and special damages as a result of Defendants' actions in intentional violation of SCUTPA. In addition, because Defendants' actions were knowing and intentional violations of SCUTPA, Plaintiff is entitled to treble damages under the SCUTPA statute.  In addition, Plaintiff is entitled to her reasonable and necessary attorneys' fees incurred in prosecution of this action.

## COUNT 11: Negligent Hiring, Retention, and Supervision
### (Against AT&T Defendants)

108.     Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

109.     At all times material hereto, AT&T Defendants agents, officers, and employees, including those directly or indirectly responsible for transferring Plaintiff's phone number and a new number to a new phone were under Defendants direct supervision and control.

110.     Defendants further assumed this duty by holding its officers, agents, and employees out to the public as competent representatives.

111.     Upon information and belief, Defendants negligently retained, controlled, trained, and supervised its agents and employees when Defendants knew or should have known that its agents and employees posed a security threat.

112.     Defendants further knew or should have known that its agents or employees would allow unauthorized access to customer accounts, including that of Plaintiff.

113.     On information and belief, Defendants negligently trained, controlled, retained, and supervised its agents and employees so they committed wrongful acts complained of

herein against Plaintiff and other members of the public. On information and belief, Defendant failed to properly control and supervise them to ensure customer account safety.

114.      It was foreseeable to Defendants that this scheme of SIM swapping by its agents and employees would compromise customer account safety or engage in other unlawful acts complained of herein. On information and belief, Defendants engaged in this SIM scheme, acts alleged herein and/or condoned, permitted, authorized and or ratified the conduct of its agents and employees.

115.      As a direct result of Defendants negligent hiring, control, retention, and supervision, Plaintiff has suffered damages in an amount to be proven at trial and determined by a jury.

---

## **COUNT 12: Intentional Infliction of Emotional Distress**

116.      Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

117.      Defendants could foresee their actions alleged herein above would inflict harm on Plaintiff.

118.      Defendants acted with intent to cause Plaintiff's emotional distress and/or acted with reckless disregard for the likelihood of causing emotional distress, extreme humiliation, unbearable and disruptive stress to Plaintiff.

119.      Defendants acted with recklessness including acting with knowledge that severe emotional distress is a probable result of the chaos, havoc, humiliation, embarrassment, and invasion of privacy almost beyond Plaintiff's bounds endurance.

120.      Application to SIM Swapping/Espionage: Defendants deliberately swapped the Plaintiff's SIM card to intercept private communications of the attorney, hacking firm systems to steal data shows intent to cause harm to Plaintiff and the recklessness, as the Defendants knew or should have known such invasions would cause humiliating distress,

anguish and despair and professional injury beyond all bounds of decency and professional conduct.

121. Defendants' invasion of privacy conduct toward Plaintiff was extreme and outrageous, so as to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community such as Charleston, South Carolina.

122. The SIM hack allowed access to every tool Plaintiff uses in the business, loss of use of her phone number, ability to receive calls, calls made were redirected, the extreme chaos caused loss opportunity of the pinnacle of her legal career and private life, an unfathomable invasion of her privacy, ruination of a 35 year career, loss of relationships, loss of business, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, defamation, slander, loss of energy, unforeseen expenses, total disruption to her business, loss of equipment, destruction of her personal life, loss of contacts, loss of information, loss of control many aspects of life and business. She suffered extreme stress, humiliation, mental anguish, emotional stress, and the most extreme invasion of privacy possible.

123. Defendants invaded Plaintiff's privacy and then proceeded to humiliate, degrade, drive a wedge in between Plaintiff's and others personally and professionally using this as leverage to force her clients to end the Federal Court case. The conduct was infinitely worse than mere insults, indignities, or annoyances; it was a legal and political war waged through technology at Plaintiff by Defendants. The invasion of Plaintiff's privacy was shocking and egregious it caused extreme chaos in every aspect of Plaintiff's life, personally and professionally was so egregious that it shocked the conscience and nearly broke the Plaintiff emotionally, mentally, physically, psychologically, personally, and professionally.

124. Defendants' egregious behavior and severe violation of privacy went on for a long period of time, continues and is frankly almost unbearable.

125. Defendants SIM Swapping/Espionage was facilitated by systematically intercepting and diverting Plaintiff attorney's phone communications, intercepting data, stealing data, and essentially implementing a system which would likely result in Plaintiff's personal and professional demise.

126. Defendants destroyed Plaintiff's credibility by interrupting all her portals and sabotaging her tools for work and life. Defendants' conduct was absolutely outrageous and beyond the realm of decency by creating ongoing extreme fear of professional ruin and personal humiliation during a very public Federal Court case in which Plaintiff and

Defendants were on opposite sides. Defendants used the SIM swap espionage to crush the Plaintiff in every aspect of personal life and business. The crushing of Plaintiff by Defendants far exceeds bounds of decency and resulted in Plaintiff Teresa Hill's severe emotional distress.

127.    Application to SIM Swapping/Espionage: The distress, anxiety, fear of professional harm stemmed from the information Defendants obtained through the SIM swap occurring at AT&T and the espionage of information Defendants intercepted led to the Plaintiff Teresa Hill's emotional turmoil by the Defendants creating leverage to pressure the Plaintiff professionally, financially, legally, and emotionally.

128.    The Defendants' actions caused such severe emotional distress and mental anguish to be suffered by Plaintiff Teresa Hill such that no reasonable person could be expected to endure it.

129.    The extreme mental anguish and emotional distress caused by Defendants was profound beyond embarrassment, humiliation, it had significant psychological and physical manifestations including but not limited to extreme fear of professional ruin, public exposure of private data, causing the attorney to suffer extreme anxiety, fear and withdrawal from her personal and professional life and deteriorating her health.

130.    Injury caused by Defendants was an extreme invasion of privacy ,the destruction of her family, ruination of a 35 year career, loss of relationships, loss of huge opportunity, disruption and destruction of life, extreme humiliation, loss of credibility, loss of an extraordinary amount of time, defamation, slander, energy, and expense, disruption to her business, loss of equipment, and loss of opportunities of a life time with her family, loss of contacts, loss of information, loss of control many aspects of life and business that run through a smartphone. She suffered extreme stress, humiliation, mental anguish, anxiety, and emotional stress. She became a physical target of others because of the tracking enabled through her cell phone and was physically injured and her vehicle destroyed. The losses outlined by Plaintiff herein are ongoing and permanent and extreme. The toll the unlawful actions of Defendants took on Plaintiff was more than most could endure.

---

**COUNT 13: Invasion of Privacy (Against All Defendants)**

131.     Plaintiffs restate all allegations in the Complaint as if set forth verbatim herein.

132.     Plaintiff has a right to privacy as it relates to her cellular information data; a subscriber identity module (SIM) stores private user data in phones on the Global System of Mobile (GSM) Network – the network used by AT&T to provide cellular services to its subscribers, particularly Plaintiff.

133.     A subscriber identify module, SIM, stores user data in phones on the Global System for Mobile (GSM) network – the radio network used by AT&T COMMUNICATIONS, INC. to provide cellular service to its subscriber.

134.     SIM cards or ESIMS are principally used to authenticate cellphone subscriptions; as without a SIM card or electronic SIM, GMS phones are not able to connect to AT&T'S telecommunication network.

135.     Not only is a SIM card vital to using a phone on the AT&T network, the SIM card or ESIM also holds immeasurable value as a tool to identify the user of the phone – a power that can be corrupted to steal property and the identity of the user. AT&T states in customer policy that it guarantees customers that AT&T will handle, manage, and oversee their interactions – including and personal information shared.

136.     Defendants did, through use of SIM or ESIM did wrongfully intrude into Plaintiff's private affairs originating with the SIM loading at AT&T but continuing far beyond that initial event.

137.     The intrusion by Defendants into Plaintiff's private affairs was intentional: The cellphone company, AT&T, intentionally facilitated the SIM loading in a scheme facilitated by Defendants. Defendants executed an intrusion into Plaintiff's private affairs by loading a SIM to access the Plaintiff attorneys and Plaintiff's Law Firms phone data (e.g., calls, texts, location, or other private information) without her consent.

138.     This information accessed on Plaintiff's iPhone was a private province which should not have invaded by Defendants but is has been to Plaintiff's extreme detriment.

139.     Plaintiff has an individual right to privacy of her personal and business content on that iPhone and other electronic devices which were unlawfully and intentionally invaded and used to invade and intrude into other portions of Plaintiff's life and business unlawfully and intentionally.

140.     The intrusion by Defendants into Plaintiff's content targeted a domain where she had a reasonable expectation of privacy, for her personal, professional phone communications, content, data, evidence, photos, trade secrets, and other information.

141.    The intrusion by Defendants into Plaintiffs iPhone content targeted a private domain which if invaded would be highly offensive to a reasonable person. Defendants by targeting Plaintiff's content included unauthorized monitoring of professional communications, personal activities, calendars, lists, research, calls, messages, drafts, strategies, locations, medical issues, family communication, photographs, finances, and more.

142.    The intrusion by Defendants of Plaintiff's content on the iPhone and ultimately other devices facilitated Defendants' intrusion into other areas of Plaintiff's privacy the most private areas of her life. Teresa Hill suffered harm, including by not limited to emotional distress, financial loss, reputational damage, professional and personal extreme and egregious invasion of privacy.

143.    Plaintiff's privacy has been intruded on by the Defendants; Plaintiff has been subjected to unreasonable intrusion without consent or authority.

144.    The intrusion into Plaintiff's private information has been into an area of Plaintiff's private lives, medical and personal decisional matter to which Plaintiff normally expects to be free from exposure to Defendants and others. Plaintiff's privacy was not merely invaded it was used to the detriment and humiliation and devastation and injury of Plaintiff.

145.    Defendants loading a SIM to access or monitor the Plaintiff's phone data without permission constitutes a direct electronic intrusion which resulted in numerous other intrusions of Plaintiffs privacy.

146.    Defendants' invasion of Plaintiff's privacy unreasonably placed the Plaintiff in a false light and defamatory light before the public.

147.    Plaintiff has a right to privacy as it relates to all matters intruded on by Defendants. Plaintiff is entitled to privacy as it relates to her communication, files, notes, photographs, family information, decisional authority, business decisions, strategies, finances, medical information, exchanges ,contacts, trade secrets, relations, messages, emails, statements, letters, faxes, interactions, transmissions, bill paying, researching, banking, finances, ideas, mapping, locations, and other related very personal content and business information.

148.    The breach of Plaintiff's privacy by Defendants in the manner described is an unwarranted extreme exploitation of Plaintiff's private, personal, and business information.

149.    Defendants have publicized and seek to further publicize Plaintiff's private affairs with which the public has no legitimate concern.

150.    Defendants caused a breach of privacy which subjects Plaintiffs and others to harassment, ridicule, shaming, hurt, outrage, stalking, and mental anguish which Plaintiffs would not have endured but for this breach of privacy and intrusion into various private areas of content of Plaintiff's life. The level of intrusion into Plaintiff's privacy is extreme, egregious, and shocks the bounds of decency.

151.    Defendants intended the wrongful intrusion into the private affairs of Plaintiff. This was an calculated invasion of Plaintiff's information by the Defendants to harass, force, coerce Plaintiff to manipulate and leverage the information so as to destroy Plaintiff's credibility and relationships with clients, attorneys, judges, friends, acquaintances all to be used for an advantage in Glen vs Seabrook Island Club and other cases, particularly cases involving rideshare companies and certain attorneys. The information was used for personal, political, business, legal, and economic advantage.

152.    Defendants intended the wrongful intrusion into the private affairs and content of Plaintiff subjecting Plaintiff to loss of credibility, harassment, bullying, ridicule, shaming, outrage, stalking, injury, and mental anguish which Plaintiff certainly has endured and more.

153.    Defendants intended the invasion of privacy and intrusion into Plaintiff's private and business information to gain an advantage in certain legal cases which Plaintiffs were handling as well as political, legal, and financial advantage. Defendants intended to harass, bully, ridicule, shame, hurt, injure, and outrage the Plaintiff, running her out of business and out of the state so she could no longer work or testify as a witness. Defendants' actions were that of witness intimidation and that of retaliatory conduct towards Plaintiff Hill.

154.    The Defendants intrusion into Plaintiff's privacy was substantial and unreasonable and the Plaintiff is entitled to damages for humiliating harassment, bullying, stalking, and degrading invasion of privacy, disruption of business, extreme embarrassment, loss of professional and personal credibility, loss of an extraordinary amount of time, energy, and expense, sleep, disruption to her personal life, decline in her health, anxiety, destruction of her vehicle, injury to her, destruction of her home, loss of data, loss of control many aspects of life and business that run through a smartphone and other electronics. The anguish of recovering repeatedly the loss of access to almost every account owned. She suffered and still suffers extreme stress, humiliation, mental anguish, and emotional stress.

155.    Plaintiff suffered and still suffers from harassment, bullying, ridicule, shaming, hurt, outrage, stalking, and mental anguish and upon information and belief will continue to suffer. Plaintiff was unable to attend normal pursuits and had been otherwise injured

and damaged, all to her damage, actual and punitive, in the amount to be determined by the triers of fact exceeding $540,000,000.00.

156.     As a result of Defendants intrusion into Plaintiff's private content with a multifaceted approach following the SIM invasion, Plaintiffs suffered and still suffer from professional disparagement, personal slander, professional slander, harassment, bullying, ridicule, shamming, hurt, outrage, and mental anguish and upon information and belief all of this conduct will continue and Plaintiff will continue to suffer the consequences of it. The information has emboldened other attorneys and legal officials, business owners, and clients to abusive behavior toward Plaintiff. The information has emboldened others in the community to abuse or ridicule Plaintiff to the point of outrageous harassment and stalking.  Plaintiff has been unable to attend normal pursuits and has been otherwise injured and damaged, all to her damage, actual and punitive, in the amount to be determined by the triers of fact.

157.     Plaintiff suffered significant injuries, chilled speech, loss of once an a life time occasions and chances of a mother, loss of relationships, personal injury, extreme humiliation, torment, anguish, anxiety,  cruelty,  and destruction of business, loss of opportunities, trashing of credibility, extreme anguish, trouncing of confidence it took a life time to build, intense anguish and anxiety of observing the destruction and injuries to family, and absolute destruction of reputation, suffering, loss of information, loss of property and damage to business which cannot be remedied and other damages an losses more fully described herein in the above paragraphs proximately caused by the Defendants invasion of privacy activity and intrusion and other causes of action full set forth herein above and is entitled to actual and punitive damages, and treble damages and such other damages as may arise during the course of this litigation to be identified.

WHEREFORE, Plaintiff prays judgment against all Defendants actual and punitive damages in the sum to be determined by the triers of fact; treble damages, costs of this action and such other and further relief as this court deems just and proper.

S/Teresa  Hill

TERESA  HILL (Federal ID 6140)
ATTORNEY FOR PLAINTIFF
6209 SAVANNAH HIGHWAY ~(Physical)

POST OFFICE BOX 369 ~(Mailing)
RAVENEL, SOUTH CAROLINA 29470
TELEPHONE (843) 889-2261
TELEPHONE (843) 889-2262
HillLawFirm@pm.me

October 29, 2025